FILED
SEP 12 AM 9:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

THEDRIC BRACKETT,

    Plaintiff,

vs.                                    CASE NO. CV-99-J-1389-S

DIXIE ELECTRICAL
MANUFACTURING CO., INC.,

    Defendant.

ENTERED
SEP 1 2 2000

## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment (doc. 16), and evidence in support of said motion (doc. 17) filed August 10, 2000. The plaintiff filed a memorandum of law in opposition thereto and evidence in support of its opposition (doc. 19) to which the defendant has filed a reply.

Plaintiff commenced this action on May 28, 1999, by filing a complaint alleging that the defendant discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., ("Title VII"). Upon consideration of the pleadings, memoranda of the parties and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain and the defendant is entitled to judgment in its favor as a matter of law.



## FACTUAL BACKGROUND

The plaintiff began working for defendant as a temporary worker in 1994 and was hired as a permanent employee in February, 1995.[1] Complaint at ¶ 7. Plaintiff is still employed by defendant. In his EEOC charge, the plaintiff complains of having to get his own materials; not receiving a raise in July and September, 1998; and applying for the position of material handler and not receiving the same. *See* Charge of Discrimination, filed as Exhibit A to the Complaint.

Plaintiff alleges that he should have been paid the higher rate of a "material handler" when he had to get his own materials because white material handlers would not assist him. Complaint at ¶¶ 9-11; plaintiff depo. at 35. At the time he was hired, he earned $7.00 an hour. Plaintiff depo. at 11, 114. During the time period at issue for the plaintiff's complaint he had to get his own materials, he received raises until he earned $9.64 an hour, while material handlers earned $10.70 an hour. *Id.* at 36. The material handlers were supposed to keep materials supplied to the machines as well as unload trucks. Statham depo. at 24.

The plaintiff further alleges that white employees got raises after a 90 day probationary period while black employees sometimes had to wait to receive the same raise. Complaint at ¶ 14. However, the plaintiff admits that this never happened to him. Plaintiff

---

[1]The plaintiff states his job classification was a "saw operator" while the defendant alleges it was a "general worker" assigned to operating a saw, and that no separate classification known as a "saw operator" exists. *See* Complaint at ¶ 7; plaintiff depo. at 10; Statham depo. at 19; Orton depo. at 27. The court finds that the distinction does not matter as no evidence was submitted that a "saw operator" would be paid differently from a "general worker."

depo. at 83, 90. The plaintiff received raises on an annual basis and every 90 days until he topped out at $9.64. *Id.* at 113-114. He testified that at no time did he not get a raise he was due, except for one pay period which was paid retroactively and the plaintiff did not consider this to be because of race.² *Id.* at 90, 114, 115. The plaintiff agrees he earned as much as any other general worker, but states he did not learn this until after he filed his complaint. *Id.* at 42-43, 45. The plaintiff admits he earned the same amount as anyone who, like him, had been there long enough to top out in pay (more than two years). *Id.* at 44, 47, 115. He was told by Jim Williams, the plant manager, that he could only earn so much as a general worker but believed Williams to be discriminating against him. *Id.* at 50.

The plaintiff states Williams discriminated against him because Carroll Gentry and Mitch Taylor told him to do so. Plaintiff depo. at 51. He states as evidence of this that white employees were awarded higher wages and cited DeWayne Franks, who was promoted to lead man for the night shift. *Id.* at 51-52. This occurred within six months after he became a permanent employee with defendant. *Id* at 53. The plaintiff admits that because he had only been there six months, he was not in a position to earn as much as Franks. *Id.* at 53-54.

The plaintiff also makes allegations that white employees could stand around and talk when their machines needed repairing, while black employees were required to find other work to do. Complaint at ¶ 15. Plaintiff depo. at 98. He states on the one occasion this

---

²The plaintiff also testified that he asked monthly for wage increases, which he did not get. Plaintiff depo. at 39-41. However, he admits he got a twenty-five cent raise every 90 days. *Id.* at 115.

happened to him, Williams told him to get back to work, but passed by a group of white employees and did not tell them to get back to work. Plaintiff depo. at 105-108, 109-111. He states that on the one occasion involving him, a similar group of white employees were not told to stop fraternizing. *Id.* at 111.

The plaintiff states that, other than himself and the material handlers, Michael Shorter (a plasma operator) and Whisenant (lead man for manufacturing) also got their own materials. Plaintiff depo. at 80. He alleges he should have earned the higher rate of pay that material handlers earned for the time period from when he became employed until he was promoted to the position of plasma operator. *Id.* at 35-36, 77, 112, 113. The plaintiff earned $9.64 per hour as a general worker while material handlers were earning $10.70 per hour. *Id.* at 113-114.

The plaintiff was the only saw operator for a time. Plaintiff depo. at 64. Someone else operated the saw only when he was on vacation. *Id.* at 65. In fact, only one person was needed to work the saw per shift. Statham depo. at 31-32. The plaintiff alleges he was the only general worker required to get his own materials and that other employees, black as well as white, were assisted by the material handlers. Plaintiff depo. at 67-68, 78-79. The plaintiff alleges this was discriminatory based on race because the material he used required a crane to move while other materials only required a forklift. *Id.* at 68-69. He also states this was race discrimination by the material handlers and the supervisors. *Id* at 77. The plaintiff states that when he became a plasma operator, the material handler assisted the

4

white saw operator who replaced him.[3] *Id.* at 70-71. Additionally, the plaintiff states that when he refused to get his own materials, a material handler would get them for him. *Id.* at 72. Statham explained that only one material handler works in the forge shop so anyone working the opposite shift from the material handler either gets his own materials or the lead man gets them. Statham depo. at 39.

The plaintiff applied for but did not receive a promotion to the position of "material handler" in September, 1998.[4] Complaint at ¶ 13. Although several employees applied for the position in the assembly department, each withdrew their applications except for the plaintiff and Michael Bolin, a white male. Depo. of Rodney Franklin at 15-16, 18 . Depo. of Al Orton at 43. Franklin, the department manager, recommended Bolin for the position to Williams because Bolin had worked in the department before, knew the shipping process and knew a lot about the parts the assembly department handled.[5] Franklin depo. at 16-17; Orton depo. at 44-46, 48. Franklin stated he did not know anything about the plaintiff at the time. Franklin depo. at 17.

---

[3]The plaintiff also points to Charlie Dingler, a white employee who did not have to get his own materials, but admits Dingler had an operation on his back and did not know whether he was restricted from lifting by his doctor. Plaintiff depo. at 71-72. Dingler was restricted to light duty work, according to Orton. Orton depo. at 52.

[4]Although plaintiff applied for and did not receive a 1997 opening as a material handler, he did not raise this in either his EEOC charge or his complaint.

[5]Franklin is a black male. Orton depo. at 43-44.

Orton testified that the qualifications included familiarity with the department, the ability to drive a forklift and operate a crane, the ability to learn computer skills and the ability to identify parts. Orton depo. at 35-36, 38-39. He also testified the minimum qualifications would be the ability to operate a forklift or crane, familiarity with parts and the confidence to learn the computer system. *Id*. at 40-41. Orton stated the plaintiff probably met these requirements. *Id*. at 41. He states the plaintiff seemed to be a good worker and seemed smart. He had no reason to believe the plaintiff would not be able to learn the job. *Id*. at 47. Orton made the decision to promote Bolin over the plaintiff and got input from Franklin and Statham after talking to the applicants. *Id*. at 42.

Franklin testified he did not know anything about the plaintiff and believed Bolin was the better candidate. Franklin depo. at 17. Before he was promoted, Bolin would fill in as a material handler any time the need arose. *Id*. at 12-13. The plaintiff admits that Bolin, who was selected for the position, had more seniority than he did.[6] Plaintiff's depo. at 83. The defendant's policy is to only look at seniority in determining whom to promote if all other factors are equal. Orton depo. at 24, 25-26. Orton also said he knew nothing about the plaintiff's work performance at the time the promotion was made and did not believe the plaintiff had any familiarity with the assembly department. *Id*. at 22, 48. Since that time,

---

[6]After Bolin was selected, but before he was promoted, Orton replaced Williams as plant manager. Franklin depo. at 17-18. When Orton took over, the job title was changed to manufacturing manager. Orton depo. at 10. Orton is in charge of all hiring, firing and promotions. *Id*. at 12-14.

6

he has learned the plaintiff is a good worker. *Id.* at 22. Kenneth Statham, the plaintiff's supervisor, testified that he did a good job both as a general worker and as a plasma operator. Statham depo. at 21.

At the current time, the plaintiff is a "plasma operator" and has held that position for the past year. Plaintiff depo. at 9. He earns $11.38 an hour. *Id.* The plaintiff agrees that his current position is a promotion over "general worker" and that he earns a higher rate of pay than a general worker. *Id.* at 55. He was promoted by Orton. *Id.* at 55, 59; Orton depo. at 22. He states he is still being discriminated against, in that:

> [i]t's more like retaliation. When they find something, nitpick or some dirty job they can stick me in, that's basically what they're doing. And changing my shifts from days to nights, based on the other plasma operator who works at night. If he goes on vacation or whatever, then I'm required to go on night shift, even though they have another person who is white and trained to run that same machine.

Plaintiff's depo. at 11-12. This other person is Terry Woodard, who is white. *Id.* at 12, 14.

The plaintiff was asked by Statham to work nights for one week because the night operator was on vacation. *Id.* at 12. He believes this to have been discriminatory because he did not want to work the night shift. *Id.* at 13. The plaintiff states Woodard told him he would not work nights in front of Statham. *Id.* at 14, 16. The plaintiff testified he knows this has to do with his race because he knows Statham and this is how Statham is. *Id.* at 15. The plaintiff then explained that before Woodard trained as a plasma operator, he was the only

7

other plasma operator in the plant aside from the night operator. *Id.* at 31; Orton depo. at 50.

The plaintiff testified:

> A. I was not asked to go in nights then. I would come in early in the morning.
> Q. I'm sorry?
> A. I would come in earlier before the shift started and work, rather than stay late or come in at night.
> Q. All right. What is your shift now?
> A. 6 to 4:30.
> Q. Okay. And what was it during the time that you say you came in earlier instead of staying later?
> A. Some mornings I'd come in at 2 and stay till 4:30 [p.m]. And sometimes I'd come in at midnight and stay till 4:30 [p.m.]. Just depend (sic) on whatever, how I felt, and when I got up.
> Q. And you were basically allowed to do it either way you wanted?
> A. Yes, because, basically, I wasn't required to work nothing but the ten hours. So, I was more or less volunteering to go in early.
> Q. But that's not something that anybody required you to do?
> A. No, no.
> Q. And you don't – you don't ascribe any racial discrimination or retaliation to that, do you?
> A. No.

Plaintiff depo. at 31-32.

The plaintiff further alleges that Statham gives blacks more strenuous jobs and allows white employees to do nothing when their machines break down, but makes the black employees find other work. Plaintiff depo. at 16. The plaintiff states as an example that when his department's material handler was out, Bolin, a material handler in another department, was brought in. However, the other material handler in plaintiff's department, a black male named Tony Marshall, was also out that day. According to the plaintiff, a black employee who was not a material handler should have been given the extra work instead of

making a white employee who was scheduled to be off come in and do the work. *Id.* at 17-18. The plaintiff states this was discriminatory and retaliatory, but not against him. *Id.* at 18-19.

The plaintiff also states as evidence of discrimination that he had been placed back working the saw while Woodard was allowed to operated the plasma machine. Plaintiff depo. at 21. When he questioned Statham about it, he was told that Woodard was cross-training, but he was then returned to plasma operator. *Id.* at 22, 26-27. The plaintiff argues enough other people were trained on both machines that there was no need to have Woodard trained on the plasma machine also.[7] *Id.* at 24. However, Orton states he needed an additional plasma operator and made the decision the plaintiff should train Woodard, because Woodard had previous experience on this machine. Orton depo. at 49-51, 53.

The plaintiff believes he was placed back at the saw because Orton and Statham were trying to make him quit. He waited three months to say anything to show them he could not be run off that easily. Plaintiff's depo. at 22-23. Statham said the plaintiff was put back on the saw for at most two weeks, because the saw person was not there.[8] Statham depo. at 50-51. Statham asked the plaintiff to run the saw instead of another employee because the plaintiff had more experience. *Id.* at 53. When Dingler returned to work from his back

---

[7] He states four people, including Woodard, could operate the plasma machine. Plaintiff depo. at 24.

[8] This was Dingler, who was having an operation on his back. Statham depo. at 51.

surgery, the plaintiff was reinstated as plasma operator.[9] *Id.* at 54. When Dingler went on vacation, the plaintiff was again assigned to the saw, on first shift. *Id.* at 65. Statham has also asked the plaintiff to fill in on night shift when he needed a saw man. *Id.* at 69.

The plaintiff also alleges Statham assigns whomever he is angry with to the tumbler, but also only assigns black employees to the tumbler. Plaintiff depo. at 99-100. Statham assigns whomever is doing the least important job at the moment to the tumbler when it needs operating. Statham depo. at 56. No one is permanently assigned to the tumbler. *Id.* Statham also explained that when one person goes on vacation, he assigns someone else to that job if it needs to be done, but he will be a person short until the employee on vacation returns. *Id.* at 60.

Statham supervises about thirteen people, spread across two shifts. *Id.* at 12, 15. Of these, seven or eight are black employees.[10] *Id.* at 13. Statham agrees he more often assigns blacks to run the tumbler than whites but states this is because he supervises two or three times as many blacks as he does whites. *Id.* at 57. Statham was the plaintiff's supervisor until recently when the plasma operator position was moved to another foreman. Statham depo. at 17-18.

---

[9] Dingler was classified as a plasma operator as well. Statham depo. at 63-64.

[10] Statham explained the numbers do not add up because he also has about five Hispanic employees, in addition to the seven or eight blacks and three whites. Statham depo. at 59.

The plaintiff states that as a result of this perceived discrimination he would "go home mad" and that he only sleeps three or four hours a day. Plaintiff depo. at 121-122. He has not been to a doctor however, because he is not tired. *Id.* at 123.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this

burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. SH. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

**LEGAL ANALYSIS**

Plaintiff asserts three grounds in his EEOC Charge of Discrimination and his complaint in support of his race discrimination claims: Black employees did not receive raises in a timely fashion although white employees did (complaint only); he should have been paid as a material handler when he was operating the saw; and he should have received the promotion that was awarded to Bolin. In this case, the evidence of discrimination is wholly circumstantial in nature and thus the Supreme Court burden shifting scheme for evaluating circumstantial evidence and allegations applies to the facts before this court. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310, 116 S.Ct. 1307, 1308, 134 L.Ed.2d 433 (1996); *citing St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

**A. The Untimely Raises and Obtaining His Own Materials Claims**

According to the *McDonnell Douglas* framework, plaintiff must establish a prima facie case of disparate treatment race discrimination under Title VII by showing that (i) he is a member of a protected class; (ii) he was subject to an adverse employment action; (iii) his employer treated similarly situated non-protected employees more favorably; and (iv) he was otherwise qualified for the job. *EEOC v. Joe's Stone Crab,* 220 F.3d 1263, 1286 (11th Cir.2000); *citing Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999). *See also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668

13

(1973); *Alexander v. Fulton County*, 207 F.3d 1303, 1333-34 (11th Cir.2000). Establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

Before engaging in this analysis, the court notes that no mention of black employees receiving their raises in an untimely fashion was presented in the plaintiff's EEOC Charge of Discrimination. As a general rule a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his or her EEOC charge. If these allegations were "reasonably related" to the claims in the EEOC charge, and "no material differences between them exist, the court will entertain them .... [T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). *See also Alexander v. Fulton County*, 207 F.3d at 1332. This court finds nothing in the EEOC charge remotely related to the plaintiff's claim that black employees were not given raises in a timely fashion.[11]

Even if the court were to entertain this claim, the court finds the plaintiff has failed to establish a prima facie case in regard to the pay raises because his testimony was that he

---

[11] The plaintiff also fails to raise this claim in his memorandum of law in opposition to the defendant's motion for summary judgment.

14

received a raise every ninety days, which was every raise to which he was entitled. Further, the plaintiff stated in his deposition that he did not believe he was discriminated against in receiving raises. Plaintiff depo. at 83, 90. Thus the court finds the plaintiff failed to make out his prima facie case of race discrimination in regard to the issue of raises and will examine this issue no further.

As to the plaintiff's claim of having to obtain his own materials when he was operating a saw, the court finds no evidence that other black employees had to get their own materials. In fact, the plaintiff testified that the material handlers got everyone's materials, black and white employees alike, except for his and two other employees who were not similarly situated to the plaintiff. Plaintiff depo. at 80. He further states that the difference was the materials he needed as a saw operator required use of the crane rather than the forklift and it was dirty work. Plaintiff depo. at 68-69. Assuming the plaintiff always got his own materials, which he admits he did not, the plaintiff failed to show similarly situated employees not within a protected class were treated differently from him. The defendant's motion for summary judgment shall be granted on this count of the complaint.

### B. The Failure to Promote Claim

To establish a prima facie case on his failure to promote claim, the plaintiff must show that (1) he is a member of a protected minority; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications and (4) a equally or less qualified individual outside the protected class was promoted. *Alexander v. Fulton County,* 207 F.3d

at 1339; citing *Taylor v. Runyon,* 175 F.3d 861, 866 (11th Cir.1999). Because Orton testified the plaintiff met the minimum qualifications for the position of material handler, the plaintiff clearly met his burden of establishing a prima facie case. As such, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the plaintiff's rejection. *Alexander v. Fulton County*, 207 F.3d at 1339; citing *Wu*, 847 F.2d at 1483-1484. If the defendant meets this burden of production, the plaintiff must then establish that the defendant's proffered reasons were pretextual. *Alexander v. Fulton County*, 207 F.3d at 1339.

While the preliminary burdens alternate between the plaintiff and the defendant, the ultimate burden of proving the employer's action was intentionally discriminatory lies with the plaintiff. *Reeves v. Sanderson Plumbing,* -- U.S. --, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); citing *Burdine*, 450 U.S. at 253. The plaintiff, in an attempt to satisfy this burden, must be given "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 120 S.Ct. at 2106; citing *Burdine*, 450 U.S. at 253; *see also St. Mary's Honor Center*, 509 U.S. at 507-508. A plaintiff may prove pretext and discredit the employer's proffered reasons by showing: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision." *Walker v. Nationsbank of Fla.*, 53 F.3d 1548, 1564 (11th Cir. 1995) (concurring opinion).

> In a failure to promote case, however, a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [employee] who received the position.... A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race. We have explained, "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where ... the reason is one that might motivate a reasonable employer."

*Alexander v. Fulton County*, 207 F.3d at 1339; citing *Combs*, 106 F.3d at 1543; *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999).

In this case, the defendant argues, and the plaintiff apparently agrees, that the white employee chosen for the promotion in question was more qualified than the plaintiff. Therefore, the plaintiff must show this reason is pretextual. Orton testified Bolin had previously worked in the assembly department and was familiar with it. Orton depo. at 48. The plaintiff merely concludes this is untrue. Plaintiff's memorandum at 7. Plaintiff states Bolin had not worked in the assembly department for at least two years before he was promoted. Plaintiff's memorandum at 6. This court notes that, taking this allegation as true, Bolin still had more experience in the department than plaintiff, who had none. Furthermore, the court finds that Franklin, who is black, recommended Bolin over the plaintiff because he had worked with Bolin before. The court finds that prior experience is a reason that would motivate a reasonable employer. *See Combs*, 106 F.3d at 1543. When an employer selects the person it believed to be most qualified, an argument that such reason is pretextual will

17

normally fail. *Smith v. Horner*, 839 F.2d 1530, 1538 (11th Cir.1988). As the Eleventh Circuit quoted the Fifth Circuit:

> [D]isparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face .... The court explained that the phrase "jump off the page and slap you in the face" "should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question (internal citations omitted).

*Alexander v. Fulton County*, 207 F.3d at 1340; citing *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir.1999).

### C. Plaintiff's Claim of Disparate Treatment in Terms and Conditions

In his memorandum the plaintiff raises a claim for the first time that Statham required him to work the night shift (second shift) and did not require white males to do the same. Plaintiff's memorandum at 8.

As stated above in regard to plaintiff's claim of unequal pay raises, the plaintiff, as a general rule, cannot bring claims in a lawsuit that were not included in his or her EEOC charge. "Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." *Wu*, 863 F.2d at 1547. If this allegation was in any way related to the claims in the EEOC charge, the court would entertain it. However, the court finds asking the plaintiff to work one or two weeks on night shift because someone else was on vacation is in no way "related" to claims of being denied a raise or a promotion.

Even assuming the plaintiff had properly presented this claim, the court is unable to find the plaintiff has met his burden of establishing a prima facie case of disparate treatment. *See e.g O'Connor,* 517 U.S. at 310, 116 S.Ct. at 1308.

The plaintiff may not have wanted to or liked working the night shift, but this does not make the same discriminatory. While the plaintiff argues there was a similarly situated white employee who was not asked to work the night shift, evidence was presented that this same employee ended up working the drill press on the night shift not long after the plaintiff worked night shift as a plasma operator. Statham depo. at 68. As such, plaintiff cannot show that he was treated differently than other, similar situated employees. Statham testified that the plaintiff was more experienced with the saw and therefore asked him, rather than Woodard, to operate the same on the night shift. Statham depo. at 53. Even assuming this reason by Statham was untrue, not every unkind act amounts to an adverse employment action. *Wu v. Thomas*, 996 F.2d 271, 273, n.3 (11th Cir.1993). Here, at most, the plaintiff was assigned for two weeks to a shift he did not want to work. He was paid an additional fifteen or twenty-five cents an hour for this shift. Plaintiff depo. at 118.

The court finds the plaintiff has failed to make out a prima facie case of discrimination in having to work the shifts on which his employer needed him. Even if the plaintiff had stated this claim in his EEOC charge and even if the court found the plaintiff to have satisfied his prima facie burden, the defendant offered a legitimate reason for wanting the plaintiff to work the night shift when the defendant needed him to and the plaintiff failed to offer any

19

evidence to discredit the defendant's proffered reasons. *See Combs*, 106 F.3d at 1543. Thus, the court finds the defendant is entitled to summary judgment on this claim as well.

## CONCLUSION

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment on all counts of the plaintiff's complaint is hereby **GRANTED**. The claims are **DISMISSED WITH PREJUDICE**. Each party is to bear its own costs.

**DONE** and **ORDERED** this the 12 day of September, 2000.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE